17-4086, First American Title Insurance v. Northwest Title. Ms. Wood? Yes. Good morning, Your Honors. Good morning. This appeal turns on whether First American Title Insurance Company or First American Title Company, LLC, ever pled, argued, or proved that one of them had standing to enforce the equity employment contracts signed by appellants Michael Smith and Christy Carroll. The answer is no. As a result, the judgment below must be dismissed in a non-suit granted because the failure to establish standing is a fundamental error that does not let a case proceed. The answer I have proposed rests on two propositions well established in American law. That each corporate entity is an independent legal entity and cannot sue to enforce the claims of parents, subsidiaries, or related corporations. And second, when a party sues for breach of contract, the party seeking relief must show they have standing to challenge or enforce the terms of the contract. In order to make a standing determination, do we have to look to some degree at the merits of the underlying facts, or at least, or alternatively, do we have to look at the underlying facts to make that determination? Take your time. I hope my question didn't provoke you. It didn't kill you. I didn't struggle with it. I'm sorry, Your Honor. No problem. Yes, you have to look at some of the underlying facts. They're important. So we come to this termination of the employees at the time of the transfer. How did that occur? Was that all verbal, or was there some writing that we can look at? Your Honor, I think the first place you have to look is at the complaint. All right. Because the facts alleged in the complaint, and on which Belen's moved for some re-judgment, were that through a series of transactions beginning in 2003 and culminating in 2009, First America, without identifying which entity, acquired 100% of the stock of equity. Equity subsequently was merged into First American Title Company, LLC. So why would First American LLC succeed to any rights that equity had to enforce the covenants against competition, et cetera, against the defendants? Because, Your Honor, the stock purchase was made by First American Title Insurance Company. That's the entity that bought the stock. Yeah, but it became the parent, then, of equity. And then equity merged with the LLC. And when Judge Lucero is asking about the evidence here, you didn't provide the transcript. We don't know what was brought out to show how the legal rights succeeded, in this case, to see whether or not they did have a cause of action. I'm not sure. I doubt that I caught a standing issue, as opposed to whether you proved all the elements of the cause of action. But do you disagree that the LLC merged with equity? I do. Really? I do. Because there is a big disconnect between the stock purchase agreement, which in their complaint, they alleged, they had that. But why are you looking at the complaint when there was a whole trial and there's a lot of evidence? Your Honor, because we moved for summary judgment based on the complaint and the evidence that was before the court. I don't think you're appealing the denial of your summary judgment? Absolutely. Really? After a jury trial, you can do that? Absolutely. We filed. Why wouldn't there be a motion NOV? Your Honor, we filed every motion we could file. There is no motion that we did not file. Well, I understand, but we have jurors. If I'm not stumping in your ground here. No, you're following. We have clear authority in the circuit that summary judgment ends at trial. I mean, we don't have summary judgment that goes on and on and on and bleeds into trials and so on. Your Honor, we moved for judgment after the jury. We moved for judgment before the jury. But if that was denied improperly, you have to establish that by giving us the transcript of the trial and establishing there wasn't evidence to support it. And you didn't do that. Your Honor, the problem was the same from the beginning. And I want to get back to your merger argument. Okay. Because this was brought up for the first time when we moved for summary judgment based on the complaint. We have two different documents with two different entities. One of them, First American Title Insurance Company, who allegedly acquired all the subsidiary. And then when we moved for summary judgment, we're told that the definitive document is the merger agreement. And the merger agreement recites all of the issued shares in the target, the target being equity, are owned by FATCO. FATCO being First American Title Company, LLC. So we have two different documents. Both of them claiming that they resulted in the acquirer getting 100% of the stock. And it proceeded that way. You're not distinguishing between being a parent corporation and being a merged entity. Your Honor, according to the merged entity, the entity, the target company, was the same one that was acquired by First American Title Insurance Company. They're completely inconsistent. And throughout this trial, we were required to litigate an entity called First American that doesn't even exist. The jury instructions are in the name of the First American. When you say you were required, you were party to that. All the instructions, everybody was talking about First American and not distinguishing between the entities. And the plaintiffs were as culpable in that regard as the defendants, weren't they? No. How so? Because we were not in possession of the evidence. And we say that throughout the trial. Well, at the end of the trial, you had the evidence. No, we didn't. Well, you had all the evidence at trial. If there was a problem here, you can bring that to the attention of the Court. You can ask for jury instructions on it. There's none of that here. This is an afterthought as far as I can tell. Your Honor, we did. We asked for jury instructions that said that each corporate entity stood on its own. The judge refused that. The judge, as you know, granted summary judgment for the other side on this basis. After the stock purchase, equity and all the employees associated with it became part of First American's general corporate purpose. That is, equity became, according to the undisputed material facts, a division of First American. It was possible for the individual defendants to have contractual obligations to both equity and First American. That is not possible. You don't lose summary judgment on a possibility. There was never any ---- So, again, you're litigating the denial of summary judgment, which I think we've indicated to you. Your Honor, but that led to the jury instructions. Well, okay. Let's go to the jury instructions. Okay. You requested a jury instruction. The judge did not definitively rule at that time. You never objected to the fact that he didn't grant the instruction. Isn't that correct? That is not correct, Your Honor. Well, I couldn't find it in the record that's provided here. When did you do that? Your Honor, we asked for the jury instructions. We asked for multiple jury instructions. This was not a typical ---- Okay. After you ask for jury instructions to preserve it, you either have to get a definitive ruling denying it, which there wasn't, or you have to object that it wasn't given, which there wasn't. There was a definitive ruling. When? The Court said he took into consideration our proposed jury instructions. Okay. Which is not a denial, is it? Well, he denied it and said he took it into consideration. He later denied it, but he didn't ---- later he didn't give it. You have to ---- the judge has all these instructions. There are lots proposed. The judge may overlook one. He may think it's already covered by other instructions, so he doesn't give it. You need to alert him that you had an instruction you proposed that he didn't give or she. I don't remember the gender of the judge here, but ---- Your Honor, we did, and we said if your ---- Where? Where? You don't cite it in your brief. Your Honor, we have requested that if a court thinks that the record needs to be supplemented in that regard, that we moved, when we filed this brief, to supplement the record. But it should not be necessary because the Court throughout this case only referred to First America. Who is First America? Counsel, if you've answered the question fully, I have a question. Okay. And my question is this, because I understood that the whole gravamen of this proceeding, of your complaint and of your squawk here before us, is that the employees of the sale, merger, whatever the proceeding was, is that correct? Were they terminated? According to the complaint, they were terminated and rehired. And in the record before us, is there a place where we could find, chapter and verse, the evidence of the termination of those employees? Your Honor, if you look at the complaint. Because it seems to me, let me just add a parenthetical, and I'll have you not look at the complaint, but the evidence of the proceedings. The, this is not a 1286 motion here. As I understand it, the employees were terminated. If the employees are terminated, that's it. There is no contract, there is no carryover obligation on their part to do anything, let alone not to compete. Notwithstanding that, even if, even if they say, well, you were entered into a new contract of employment, that employment was two years preceded before there was a termination, before there was this so-called breach of the covenant not to compete. Your Honor, it was years. So I get back to what I think is a very simple question made very complicated by the argument so far. And that is, is there evidence that these employees were terminated? What is it? Where can I find it, chapter and verse? Your Honor, you can find it in the sealed appendix, where you will find the fact that all of the employees signed First American agreements, employment agreements no later than early 2012. And the so-called merger doesn't happen until the end of 2012. Is that the document that's titled, that First American provided and it relates to all its subsidiaries, affiliates, et cetera, and says, if you are an employee of any of these people, you agree you won't violate these conditions? That's part of it, Your Honor. But they each ---- Is there more than one document like that? They each signed bonus agreements, making them employees of First American. That happened at the end of 2011 and early 2012. And is that document in the appendix? That's in the sealed appendix, yes. Well, is there still a fact question about their employment status then? Your Honor, one of our problems with the Court is that he did not instruct the jury on the significance of judicial admissions. Six places in the complaint, the plaintiffs argue that we became employees as a result of the SPA. It's not until the summary judgment when they come up with the theory that it happened as a result of the merger. But even if it was the merger, it was too late because we had already signed First American employment documents. Did Smith and Carroll testify at trial? They did testify. Did they testify that they were terminated by equity and hired by First American LLC? They testified they were hired by First American. All the documents say First American. That's the whole problem. These ---- I'm not sure this matters, but equity then would have had a cause of action against Smith and Carroll for breach of the non-compete at that point? No. Under your theory of the case? No, because our theory is, of course, that the agreements lapsed more than a year before the Northwest was formed. In 2008, under your theory of the case, their employment status ended with equity upon the stock purchase agreement, correct? And they switched employers. Either that or no later than late 2011, early 2012 when they had to sign First American employment agreements. It wouldn't happen, but could equity have sued them for their conduct as employees of a competitor? Why would they? They are wholly owned subsidiary of either First American title insurance company or First American title ---- Why does First American lose the benefit of the non-compete then? Because they didn't tell us which one of the First American entities were entitled to enforce those agreements. Okay. What did they ---- And that's Belleville, Your Honor. That's your case. What should they have done to ---- What should First American have done to protect its interest in the non-compete agreements? Your Honor, they should have been clear about who was the employer. Instead of playing what their counsel admitted at the pretrial was a corporate shell game. They wanted the benefits of having those employees in whatever entity they wanted and they never assumed those contracts and they changed their employment status and they changed their salaries. They had all the benefits of tying them up and none of the downside. No, she just used the word laxed rather than terminated. I think this will just take a very brief answer. Okay. You complained a couple minutes ago that the district court did not instruct the jury about the admission in the complaint. Did you request an instruction? Yes. And what happened? It was denied. It was denied or just not given? Did he formally ---- Did he explicitly deny it? Yes. Thank you. Thank you, counsel. Your Honor, I should also say that Rule 51 lets you reverse on the basis of plain air and these were plain airs. Did you argue that in your briefs? I did. Okay. All right. May it please the Court. My name is Matthew Wally and I represent First American. The underlying ---- Counsel, if I may. Please. Because I'd like to get to the meat of the case instead of talk about the mayonnaise and the quality of the bun. It seemed to me, reading the briefs, that the employees that are bringing this proceeding were treated at the time of merger almost as if they were corporate assets. And that that triggered the problems that we have that have led to this litigation and now this appeal. There were ---- The original employment agreements that incorporated the covenant not to compete were between these plaintiffs and whom? What corporation? The ---- First of all, they were the defendants. First American was the plaintiff. Yes. The ---- Excuse me for ---- And there were two types of agreements. There were the employment agreements. Right. And then there were the agreements that were contracts that came out of the employee handbook and the Code of Ethics, which was a First American document. But to answer your question ---- Just a second. Not so quick. Was the employment agreement, and you're saying the employee handbook of the original party, the original corporation? No.  The employee handbook of the First American family of companies. And you're saying that that was a contract between the employees and the corporation? I'm saying that that was a contract as determined by the trial judge and by the jury. Well, it depended what the trial judge determined, not that they were irrelevant. They're entirely different. Is that employment, those employment terms from the employee handbook, were those signed by the employees? They were signed electronically by what happened. And there's evidence in the record of this. The employees, when they would go into the electronic version of these employee handbooks, and they would acknowledge that they had read and assigned it. And it's in the record. And there was testimony on that. And they acknowledged that they read them. Correct. And understood them. Correct. All right. And that was actually a ---- It was the employee handbook that governs the First American family of companies, which as expressed in the contract, and I think, Judge Hart, you paraphrased part of this. In the employee handbook, it says it applies to whatever First American company that you're working for. All right. So at the time of the corporate transfer of ownership, walk us through that. Okay. What happened was these employees ---- No, not the employees. Corporation to corporation. Well, First American Title Insurance Company ---- Right. ----purchased stock in Equity Title. All right. Which was the original employer of these employees. That happened in a series of transactions between 2003 and 2008. And at the end of that ---- Basically, Equity is still an independent corporation with contractual relationships with the employees. Equity remained a corporation. They went to work every day in a building called Equity Title. They're stationary. Their forms had Equity Title. That company continued to exist throughout the entire period of time of the stock acquisitions by First American Title Insurance Company until 2012 when Equity Title merged into First American Title Company. And First American, whichever, had purchased 100% of the stock of Equity by 2008. Is that correct? Correct. So this is three years after it's become essentially the parent of Equity. Well ---- The merger is three years after. Yes. The company that acquired the stock between 2003 and 2008, which we refer to as First American Insurance, is the parent company, First American Title Company, which is the entity that later merged with Equity. That is a wholly owned subsidiary of the stock acquirer. But you had talked about this series of several years over which First American Insurance had acquired Equity. That was completed by 2008. It was. It was 100% parent of Equity. It was. But the merger that we're about to talk about was three years later. Is that correct? It was four years later. It was in 2012. Okay. I would have expected to find somewhere, I guess in 2008, you know, a document as part of the stock purchase agreement, whatever, that the new parent accepts or is assigned all the contracts and obligations of the subsidiary, Equity. You know, something that demonstrates that everything was shifted over from Equity's control to First American's control, including the non-compete agreements. But am I missing something? There isn't anything like that that formally demonstrates that First American adopted all these contracts. Two answers to that question. The first is there is a document in the record. It is an exhibit or a schedule to the 2008 stock purchase agreement, which identifies that at least two of these employment agreements were expressly Smith and Williams. Carroll's was a different form of agreement. What's it say about them? It says that First American title, excuse me, First American insurance is continuing those agreements. So none of the employees exceed to that? Well, they certainly did by course of performance. And this was, again, one of the things that the trial court found in summary judgment is that they continued to work for equity title. They can even though their paychecks basically said they're terminated and rehired by First American. And those agreements lapse. They didn't fall. And you're saying what in the in the record would we trade this one way or the other? We need to be very clear about something. They were never terminated. And in the complaint, nowhere in the record were they terminated. There's a false dichotomy that the appellants allege here that if they are hired by First American, they are therefore terminated by equity. And that's not true. That's a theory. Well, that's their theory. But there's no authority for it. The trial court expressly denied that on summary judgment and at multiple points in time throughout the pretrial and trial process. But getting to my first question or my first observation, it seems like you were treating the employees as corporate assets because the employees, as long as they have or are willing to work, are employees of whoever is hiring them and paying them. But the obligations of the covenants not to compete are independent legal obligations between them and equity. And so the corporate form does matter. And equity was giving them a paycheck until some point, and then at some point they no longer, as I understand the facts, were getting a paycheck from equity but are now working for somebody else. They were getting paychecks from First American that identified them as employees of equity title. If I am working for Judge Temkovitch, tending his garden, and his neighbor buys him out, are you saying that I am now subject to any obligation I may have had to Judge Temkovitch to the new neighbor that bought Temkovitch Acres? No. We're not saying that. And that's not the situation we have here. In fact, equity title remained a corporation that these people worked for. The fact that their paycheck, or they may have been on the First American payroll, that doesn't mean that they were ever terminated by equity. Well, is equity still in existence? Equity is in existence as it has merged into the second First American entity, First American title. Is equity still a corporation filing its corporate statement of existence to the Secretary of State and exists as a separate corporation? Not since the merger. All right. But, again, there's a stock purchase, which is what I think you're talking about, and then the merger. Because my understanding was the exact opposite of the Chief's on something. When a corporation's stock is acquired by someone else, it becomes a subsidiary of another corporation. That doesn't change the legal relationship between the employees of the subsidiary and the subsidiary, does it? Not at all. So they were employees of equity even after equity was 100 percent acquired by another company. It's like it was as if John Smith owned the stock of equity and now Fred Smith buys it. That's exactly right. Equity still exists. So I have no problem up to that point. Any covenant against competition in the employment agreement with equity continues. And what you have mentioned is there was an additional obligation that the equity employees now had because they signed this document as an employee of an affiliate of the overall First American entity. Right. Okay. So they have that agreement. Then equity ceases to exist when it's merged into the LLC. Well, it now exists as the LLC. Okay. And then the covenants, it's, I assume, an employment agreement with a company continues after that. An employment agreement with a corporation, anyway, continues when that corporation merges with another corporation. Yeah, by operation of law, both statute and Utah and Tenth Circuit authority, which we've cited in our brief. Okay. So at this point, there are two obligations on the defendants. One is whatever agreements they had with equity have continued even after equity becomes a subsidiary and then even after equity merges with another company. Those obligations are owed to the LLC. In addition, there are obligations to Fidelity. I'm sorry. First American. That's going to sound really stupid on the record, isn't it? First American. Because of this document that was signed when First American became the parent. And that's an obligation owed to First American. Is that correct? That's exactly right. And the obligations, importantly, are essentially the same. They're obligations against competition and solicitation. Now, one reason this is so complicated is it appears to me that nobody worried about this during the trial. Everybody was referring to First American. But now opposing counsel is saying I've misconceived this, that the attorneys for the defendants continue to say you've got to distinguish between these entities and which one has rights in this case. They were identified and look at jury instructions eight and nine. They are expressly separated out as the two separate entities that they are. And then as had been the course of performance by counsel in the court throughout the pretrial and trial proceedings, they were referred to collectively as First American. There was never a motion. Even though the source of the defendant's obligations was to some extent different with respect to the two First American entities. Insofar as the equity contracts, they were different. But insofar as the employee handbook contracts and duties, they were the same. Because in that regard, they emanated from the same employee handbook and code of ethics. And was there any attempt, was there any request for instructions to make these distinctions to the jury? There was a request, and it, in fact, was done. Look at instructions eight and nine. They expressly say that there are two companies, two First American companies that are being collectively identified as First American. Because nobody, and there was really no substantive difference between the two for purposes of the issues in trial. Because of the dual obligations we're talking about, both under the equity contracts and on the First American handbook. Also look at the special verdict form. The first three sections, as I recall, required the jury to, in identifying the contracts and the breaches, if any, they acknowledged each of the defendants, they had to show the check of box that said that they had contractual and other obligations under the First American handbook. Now, meanwhile, back at the ranch. At the time of the... Meanwhile, back at the ranch, and as Judge Baldock used to say, if the nuts and butts were candy and nuts, we'd all have a Merry Christmas. But the fact is that at the time of these corporate transfers, mergers, whatever you call them, were the employees notified or given any opportunity to reaffirm any of the covenants that they may have had with their original employer, equity? Were they notified of the transfers and the fact, or take the position that you're taking here, that those obligations continued? Were they put on notice in any way so that they could say, I don't want to work under these terms, I quit? That they were not asked to sign new non-compete agreements as the equity agreements, because from First American's perspective, those equity agreements... I understand. ...continued. They were, however, given the employee handbook and the code of ethics, they acknowledged electronically receiving and reading those. Those documents imposed upon them similar non-compete, non-solicitation kinds of duties. So you're saying that a new obligation arose at that time? There was really a dual obligation once they became part of the First American family. But if your theory is correct on this latter point, that the signing or the acknowledgement of the handbook became a dual obligation, a condition of employment, then you don't really need the original contract at all, correct? You don't. You do not. And did you argue that to the jury, and was that the predicate of your case? We did. And in referring to the first three sections of the special verdict form, you'll see that the jury expressly found that even though the Court had told them that, subject to defenses, the equity title contracts were binding, they also had to check the additional box about being bound by the employee handbook. So that's exactly right. The employee handbook is an ultimate safe harbor to the substantive arguments that the appellants have made about the equity contracts not being enforceable. You can throw that issue out. I'll grant that to you, Ms. Lee. First American is a California company. It is illegal to require employees to sign non-compete agreements. The First American handbook does not contain a non-compete agreement, and neither does the Code of Ethics. That's my 30 seconds. Thank you.